**LARRY LIGHTNER, Inc.**

v.

**UNITED STATES.**

No. 14408.

United States Court of Appeals,
Fifth Circuit.

June 18, 1954.

Howell Ward and Margaret B. Brown, Corpus Christi, Tex., for appellant.

Brian S. Odem, U. S. Atty., William R. Eckhardt, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES, and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a judgment in favor of defendant in an action brought by Larry Lightner, Inc., a Texas corporation, against the United States under the Tucker Act, 28 U.S.C.A. §§ 1346, 2401, 2402. Appellant is asking the reversal of a judgment of the trial court refusing to award it damages in a sum claimed as due for tomatoes alleged to have been furnished by appellant to the United States Navy pursuant to the terms of a duly executed contract, but which appellee's officers refused to accept.

The material facts are these: The Quartermaster Market Center, Fort Worth, Texas, advertised for bids for tomatoes, sending out to various prospective sellers including appellant a notice of intent to purchase. The notice called for bids for delivery F.O.B. destination and the specifications and conditions set forth in the Government's proposal stated, among other things: "To arrive: Naval Supply Center Oakland, California, 1786 Lug export tomatoes, U S 1, mature green * * * delivery date May 9–10. * * * Quotations must be submitted on an F. O. B. destination (delivered) basis * * *." On May 1, 1950, and after appellant received this notice, its vice president Creekmore engaged in a teletype conversation with Captain Adams of the Market Center and in reference to the notice asked how the lot for Oakland was to be delivered, and in response to this inquiry he was advised "prepaid CBL to show for export ocean movement copy of prepaid commercial B/L to be mailed consignee." Creekmore then asked whether the shipment was to be by rail rather than truck and was informed that the mode of shipment was optional "so long as produc'ᷓ arrive in proper grade * * *." Creekmore thereupon submitted appellant's bid as follows: "we will submit 3.50 *delivered Oakland* on the lot." (emphasis supplied). Later in the same day appellant received a telegraphic reply stating "You awarded 1786 new lug tomatoes 3.50 General Supply Depot * * * Naval Supply Center, Oakland, California * * * May 9–10 Tomatoes

for export US one mature green * * * prepaid CB/L to show quote for export Ocean movement unquote wire consignee. * * * " The above negotiations constitute the contract between the parties, as the formal contract prepared by appellee had not been presented to and signed by appellant at the time of the rejection of the tomatoes by appellee.

Appellant delivered one car containing 900 lugs of tomatoes to the Texas and New Orleans Railroad Company on May 2, 1950, and a second car containing the balance of the tomatoes on the following day. Pursuant to the Government's instructions, appellant caused the tomatoes to be consigned to appellee's Supply Officer, General Supply Depot, Naval Supply Center, Oakland, California, the named consignee in the bill of lading. At the time of delivery to the carrier the tomatoes were inspected and were found to be in the condition and grade called for by the contract and properly packed and iced. After packing, inspection and loading the cars were shipped to Oakland and on May 3, 1950, appellant notified the consignee, via Western Union telegram, of such shipments and the appropriate shipping data. The first car arrived in Oakland May 9, 1950, but the second car did not reach Oakland until May 11th. Following their arrival at the point of destination the tomatoes were inspected by appellee and were found to have deteriorated below the standard ordered. More specifically the tomatoes in the first car averaged approximately 55% mature green, 35% turning and 10% ripe and firm and in the second car they averaged approximately 35% mature green, 45% turning and 20% ripe. Because of the deterioration found to exist at the time of inspection appellee rejected the tomatoes and refused payment for them as not being in compliance with the contract, in that they were in too ripe condition for export shipment. In addition it refused to accept the second car on the further ground that it arrived one day too late, the tomatoes being scheduled for shipment aboard a vessel which sailed on May 11, 1950.

Pointing to the fact that it placed the tomatoes on board a common carrier, and, pursuant to the Government's instructions, caused them to be consigned to the Government's officer, named as consignee in the bill of lading, appellant is here insisting that the title to the tomatoes passed to the buyer when they were placed on board the cars at origin, and that the risk in transit and responsibility for loss or damage was thereafter assumed by appellee. Appellant takes the position that the principle involved is strictly one of sales law and citing United States v. R. P. Andrews & Co., 207 U.S. 229, 240, 28 S.Ct. 100, 104, 52 L.Ed. 185, argues that this case is governed by the rule there recognized, namely: "That, as a general rule, the delivery of goods by a consignor to a common carrier, for account of a consignee, has effect as delivery to such consignee, is elementary. That where a purchaser of goods directs their delivery for his account to a designated carrier, the latter becomes the agent of the purchaser, and delivery to such carrier is a legal delivery to the purchaser, is also beyond question. Certain also is it that when, on the delivery of goods to a carrier, bills of lading are issued for the delivery of the goods to the consignee or his order, the acceptance by the consignee of such bills of lading constitutes a delivery."

We do not at all agree that this general rule is here controlling for the simple reason that we are not required to rely on abstract principles where as here the parties have expressly set out in their contract the terms and conditions of delivery. The statement in the proposal of the Quartermaster Market Center, by which the negotiation was commenced, "F. O. B. destination (delivered)," gives rise if standing alone to the implication that it was intended that the goods should be delivered at the cost of the seller at Oakland. It will be remembered that during the teletype conversation appellant's vice president specifically referred to this proposal and on being advised that the tomatoes must arrive in proper grade submitted its bid "deliver-

ed Oakland." The telegraphic award merely awarded the contract in accordance with appellant's bid under the same terms and conditions previously mentioned and set forth in the notice of intent to purchase and the teletype conference. Contrary to appellant's view we construe the contract, which is in no sense ambiguous, as fixing the time of acceptance of title subsequent to delivery at Oakland. Under the authorities, it would seem to be indisputable that an expressed provision for delivery to be F. O. B. destination in the absence of a contrary intention requires the seller to make delivery to the buyer at the destination point before title passes. 2 Williston on Sales, Rev.Ed., § 280b, page 98; 101 A.L.R. at page 295. Furthermore, and apart from this principle, the law of Texas, where the contract was entered into, clearly provides that "where the contract expressly requires actual delivery to the buyer, or delivery at a designated place, * * * mere delivery to the carrier does not operate to transfer the title; on the contrary, the goods must be turned over to the buyer or reach the destination agreed upon before the property will pass." 37 Texas Jurisprudence, § 206, pages 457–458. It follows that appellant's contention that the property passed to appellee as soon as the goods were delivered at the point of origin yields to the terms of the contract indicating a contrary intention. United States v. R. P. Andrews & Co., supra, is not to the contrary for after setting forth the general rule upon which appellant relies the court expressly declared: "Of course the presumption of delivery arising from the application of any or all of these elementary rules would not control in a case where, by contract, it clearly appeared that, despite the shipment, the goods should remain at the risk of the consignor until arrival at the point of ultimate destination." Suffice it to say that the goods not only were the property of appellant while en route to Oakland but were required to be delivered in proper grade and therefore were certainly at appellant's risk.

The judgment of the District Court was right. It is

Affirmed.